**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **JESSE JOE HERNANDEZ,** | § | |
| **PETITIONER,** | § | |
| **vs.** | § | **No. 3:06-CV-846-P** |
| | § | |
| **NATHANIEL QUARTERMAN,** | § | |
| **DIRECTOR, TEXAS DEPARTMENT OF** | § | |
| **CRIMINAL JUSTICE,** | § | |
| **CORRECTIONAL INSTITUTIONS** | § | |
| **DIVISION,** | § | |
| **RESPONDENT.** | § | |

**MEMORANDUM OPINION AND ORDER
DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Jesse Joe Hernandez, sentenced to death for capital murder, petitions the Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, contending that his conviction and sentence are unconstitutional in several respects. The Court denies Petitioner's petition for a writ of habeas corpus.

## I.  HISTORY OF THE CASE

A jury convicted petitioner of capital murder, and his punishment was assessed at death by lethal injection. *State v. Hernandez*, No. F02-00777-HQ (204th Judicial District Court, Dallas, Texas, July 22, 2002). The Texas Court of Criminal Appeals affirmed both the conviction and the death sentence in an unpublished opinion. *Hernandez v. State*, No. 74,401 (Tex. Crim. App. May 26, 2004). Petitioner filed a state application for writ of habeas corpus on May 4, 2004. The Court of Criminal Appeals denied relief in an unpublished order. *Ex parte Hernandez*, No. 62,840-01 (Tex. Crim. App. May 3, 2006).

Petitioner filed the instant federal writ of habeas corpus on April 30, 2007, challenging his conviction and death sentence. Respondent filed an answer on October 31, 2007 and furnished the state court records.

## II. ISSUES

Petitioner asserts that he is being held unlawfully by respondent on the following seven grounds for relief :

A. The trial court violated Petitioner's right to due process under the Fourteenth Amendment by admitting Petitioner's oral confession into evidence at trial;

B. The prosecutor violated Petitioner's Fifth Amendment rights by commenting on his failure to testify during closing arguments;

C. The trial court violated Petitioner's due process rights under the Fourteenth Amendment when it refused to give a requested parole instruction to the jury;

D. The Texas capital sentencing scheme violates the Fifth and Fourteenth Amendments because it does not provide for a burden of proof regarding mitigation evidence;

E. Use of the word "probability" in the future dangerousness special issue violates the Eighth and Fourteenth Amendments because it lowers the State's burden of proof and fails to sufficiently guide the jury in evaluating the evidence;

F. The punishment special issues are unconstitutional under the Eighth and Fourteenth Amendments because several terms are not defined for the jury in the jury charge; and

G. Petitioner's rights under the Eighth and Fourteenth Amendments were violated by the Texas "12-10" rule because the jury was not informed of the effect of one holdout juror at punishment with respect to the punishment special issues.

## III. STANDARD OF REVIEW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions

for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997).

Because petitioner filed the instant petition after its effective date, the Act applies to his petition.

Title I of the AEDPA substantially changed the way federal courts handle habeas corpus actions.

Under 28 U.S.C. § 2254(d), as amended by the AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim —
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable
>> application of, clearly established Federal law, as determined by the Supreme Court
>> of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination
>> of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term

of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural."

*Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000). In this case, the denial of petitioner's state writ

constitutes an adjudication on the merits. *See Ex parte Thomas*, 953 S.W.2d 286, 288-89 (Tex. Crim.

App. 1997) (holding that a denial, rather than a dismissal, signifies an adjudication on the merits).

The court of appeals also considered the merits of petitioner's claims raised on direct appeal. *See*

*Sims II.* The AEDPA standards enumerated in 28 U.S.C. § 2254(d) thus apply.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin*

*v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established Federal law,

within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached

by [the Supreme Court] on a question of law or if the state court decides a case differently than [the]

Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13

(2000).

3

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## IV.  FACTUAL BACKGROUND

The Court of Criminal Appeals recited the following factual background in its opinion on direct appeal:

> The evidence at trial showed that at the time Karlos and Melodi were assaulted, Misty Leverett, [ten-month-old] Karlos, and [four-year-old] Melodi, were living with appellant, his wife Mary Rojas, their young son, Joshua, and Gilbert Gomez. On the day of the assaults, Leverett went to work and left the children in the care of appellant and Rojas. Rojas testified that after Leverett left for work around noon, she stayed home with the children while appellant and Gomez left to run errands. When appellant and Gomez returned about two hours later, Rojas left for her sister-in-law's house and

4

was gone approximately thirty to forty-five minutes. Rojas testified that when she got home, she heard appellant screaming at Joshua. She picked him up and took him to the room she shared with appellant. Rojas asked where Karlos and Melodi were, and appellant replied that they were sleeping in the next room. Rojas then went into her room and relaxed with Joshua. Later, when she heard appellant preparing a bottle, she told appellant she was going to go into the room where Karlos and Melodi were sleeping. Appellant instructed Rojas not to enter the room for fear she would wake them up. Despite having seen blood stains on appellant's shirt, Rojas waited until Leverett got home from work to check on the children.

Levertt testified that when she arrived home, she went into the dark room she shared with the children and found Melodi complaining that her head hurt. Rojas and Leverett took Melodi out into the kitchen and saw that her head was swollen with "red splotches. Alarmed, Leverett decided to take Melodi to the hospital. After they left, Rojas checked on Karlos and noticed his lips were swollen. She determined Karlos was badly hurt and took Karlos and Joshua down the street to her sister-in-law's house to call an ambulance.

When Leverett and Melodi arrived at the hospital, hospital workers asked Leverett if she had any other children. When she replied that she did, the hospital workers instructed her to return home and get her son immediately. Leverett testified that when she returned home, appellant was alone and he told her that Karlos was at his sister's house. Leverett asked appellant to take her there but he refused. Moments later, police arrived and informed Leverett that Karlos had been rushed to Children's Hospital by ambulance.

In addition to this evidence, appellant stated in his voluntary written statement that he was babysitting Melodi and Karlos and "they were being very bad by crying a lot for nothing." Appellant continued that he "just exploded and hit them with the back of my hand not realizing I was hurting them[.]"

*Hernandez,* slip op. at 7-9. (footnotes omitted). Furthermore, the Court of Criminal Appeals set forth the following facts surrounding the statements made by Petitioner while he was in police custody:

When police began investigating the assault on Karlos, they went to appellant's home where he and his wife had been babysitting Misty Leverett's ten-month-old son, Karlos, and Karlos' four-year-old sister Melodi. They discovered that appellant had some outstanding warrants, arrested him, and transported him to the police station. While there, Detective Warren Breedlove spoke with appellant to obtain some general information and inquire about the injuries to the children. At a pre-trial hearing regarding the voluntariness of appellant's written statement, Breedlove testified that appellant was not a suspect at that time so he was not informed of his *Miranda* rights.

5

Appellant gave an affidavit denying any knowledge of what happened to Karlos and Melodi and was later transported to the county jail. After police spoke with Karlos' doctor and with Melodi, appellant became a suspect in the assaults. Breedlove met with appellant, read him his *Miranda* warnings and began an interview. Over approximately an hour and a half, appellant repeatedly admitted and then denied striking the children. Breedlove asked appellant about a flashlight found at the scene and appellant admitted he may have hit Karlos with the flashlight.

Detective Lesher took over the interview after appellant became upset with Breedlove....Lesher asked appellant to make a written, voluntary statement. After speaking with his wife and using the restroom, appellant agreed. In his statement, appellant admitted hitting Karlos and Melodi because they cried for no reason, because he was upset over recently losing his grandmother, and because he had a bad day with his wife. He added that he was sorry for hitting them. There was nothing in appellant's written statement about hitting Karlos with a flashlight.

*Hernandez*, slip op. at 2-4. (footnotes omitted).

## V.  PROCEDURAL ISSUES

Respondent contends that Petitioner has failed to exhaust state court remedies with respect to the federal constitutional claims contained in his first, third, and fifth grounds for relief. Respondent asserts that Petitioner did not address these claims either on direct appeal or in his state writ of habeas corpus and that they are therefore procedurally barred. Nonetheless, Respondent asserts that these claims should also be denied on their merits pursuant to 28 U.S.C. § 2254(b)(2).[1] Respondent also contends that Petitioner's second ground for relief was decided at the state level on an independent and adequate state law ground and is therefore a procedurally barred claim. (Response at 2). This Court will address these procedural issues when it addresses Petitioner's specific grounds for relief.

---

[1]     An application for a writ of habeas corpus may be denied on its merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State. 28 U.S.C. § 2254(b)(2).

## VI.  EXAMINATION OF THE GROUNDS FOR RELIEF

**A.    Oral Confession Claim**

In his first ground for relief, Petitioner contends that his due process rights under the Fourteenth Amendment were violated when the trial court disregarded Article 38.22 of the Texas Code of Criminal Procedure and admitted some of Petitioner's oral statements to the police into evidence at trial. Respondent asserts initially that this ground for relief is procedurally barred because it was not exhausted at the state level.  In his brief on direct appeal, Petitioner alleged as a point of error that the trial court had committed reversible error by admitting oral statements made by Petitioner in that the admission violated Article 38.22 of the Texas Code of Criminal Procedure. (direct appeal brief, p. 3).  In its opinion on direct appeal, the Court of Criminal Appeals ruled that the trial court did not abuse his discretion in admitting Petitioner's oral confession into evidence because the State was entitled to question the detective about the oral confession under the state evidentiary rule of optional completeness. (slip op. at 2, 5-6); *see* TEX. R. EVID. 107.  Neither Petitioner in his brief nor the court in its opinion refers to federal due process rights, and this ground for relief was not raised in Petitioner's state habeas petition.

Procedural default occurs when a petitioner fails to exhaust all available state remedies *and* the state court to which he would be required to petition would now find that the claim is procedurally defaulted. *Bledsoe v. Johnson*, 188 F.3d 250, 254 (5th Cir. 1999).  And indeed, were this unexhausted claim now brought in a subsequent state writ of habeas corpus, the Court of Criminal Appeals would consider this claim to be procedurally defaulted under Article 11.071 § 5 of the Texas Code of Criminal Procedure, which prohibits a claim from being raised in a subsequent habeas application unless: 1) it could not have been raised in the previous application because the factual or legal basis was

7

unavailable at the time; or 2) the claim contains sufficient facts establishing that, but for a violation of the United States Constitution, no rational juror would have found petitioner guilty or would have answered the punishment issues in the State's favor. *See* TEX. CODE CRIM. PROC. ANN. art 11.071 § 5(a) (Vernon Supp. 1999). The legal and factual claims presented in the ground for relief that Petitioner failed to raise at the state level were available to him at the time he filed his direct appeal and state habeas application, and Petitioner does not argue otherwise. And, Petitioner has made no attempt to allege, much less prove, that his unexhausted claim contains sufficient facts establishing that, but for a federal constitutional violation, *no* rational juror would have sentenced him to death. Accordingly, Petitioner is procedurally barred from raising this ground in a federal petition for writ of habeas corpus unless he can establish either cause and prejudice for the failure to raise these unexhausted claims at the state level or that the failure to consider this claim on its merits would result in a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722 (1991); *Jones v. Johnson*, 171 F.3d 270, 277 (5th Cir. 1999). Petitioner has neither argued, nor shown, either cause and prejudice or a fundamental miscarriage of justice. This ground is procedurally barred.

Nevertheless, under 28 U.S.C. § 2254(b)(2), a federal petition for a writ of habeas corpus may be denied on its merits, notwithstanding the petitioner's failure to exhaust state court remedies. *See* 28 U.S.C. § 2254(b)(2). Thus, the Court will address the claim on its merits.

Petitioner asserts that his federal due process rights were violated when the trial court allowed Detective Breedlove to testify during re-direct examination that Petitioner told him during the interrogation that he may have hit Karlos with a flashlight. Article 38.22 of the Texas Code of Criminal Procedure sets forth under what circumstances both written and oral statements made by an accused during custodial interrogation can be admissible against him in a criminal proceeding. With regard

8

to oral statements, this statute prohibits their admission into evidence unless an electronic recording is made of the statement, this recording includes the accused receiving his *Miranda* warnings and waiving them in a knowing, intelligent, and voluntary manner, the recording device was operated by a competent person and was both capable of and made an accurate recording of the statement that has not been altered, all voices on the recording are identified, and the accused's attorney receives an accurate copy of the recording at least twenty days before trial. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 § 3 (Vernon 1977).

However, as noted earlier, on direct appeal the Court of Criminal Appeals denied Petitioner's claim that the trial court had erred in admitting Petitioner's oral statement into evidence based on the state evidence rule of optional completeness. In particular, that court ruled that the trial court had not abused its discretion in admitting Petitioner's oral statement into evidence because, during cross-examination, defense counsel asked Detective Breedlove to testify about portions of his interrogation of Petitioner and some of Petitioner's oral responses that were not included in the written statement. Accordingly, the court ruled that the State was entitled to ask Breedlove about other portions of the interview, under the state evidentiary rule, because they were necessary in order for the jury to fully understand the conversation as a whole. *Hernandez*, slip op. at 4-5.

In federal habeas proceedings the court does not sit in review of a state court's interpretation of its own law. *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998), *cert. denied*, 526 U.S. 1148 (1999); *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995). Moreover, in federal habeas actions, a state court's evidentiary rulings will mandate relief only when an error is so extreme that it constitutes a denial of fundamental fairness. *Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998), *cert. denied*, 526 U.S. 1118 (1999); *Andrade v. McCotter*, 805 F.2d 1190, 1193 (5th Cir. 1986). Federal habeas review of

trial error is limited to whether the error so infected the trial with unfairness as to deny due process. *Donnelly v. DeChristofero*, 416 U.S. 637, 642 (1974). And, where there is constitutional error at trial, at the federal habeas level, the appropriate harmless error test is the one set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993). Under this test, error is deemed harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Id*. at 637.

In the case at hand, Petitioner contends that the state court's evidentiary ruling resulted in a denial of fundamental fairness such that his due process rights were violated because: 1) the Texas state statute that sets out the circumstances under which a criminal defendant's oral statement to the police can be admitted into evidence creates a liberty interest under the Fourteenth Amendment; and 2) the state, by not following its own requirements for the admission of an oral statement into evidence, rendered his trial fundamentally unfair. The Supreme Court has held that a state statute can create a liberty interest under the Fourteenth Amendment. *Vitek v. Jones*, 445 U.S. 480, 488 (1980). However, as Respondent notes, the Supreme Court has also held that the procedural guarantees of the Fourteenth Amendment apply whenever the State has recognized and protected a liberty or property interest and attempts to remove or significantly alter that protected status. *See Paul v. Davis*, 424 U.S. 693, 710-11 (1976). Petitioner has pointed this Court to no case in which a federal court has held that a state statute setting forth an evidentiary exclusionary rule itself creates a liberty and/or property interest. Moreover, even if the statute in question did create a liberty interest under the Fourteenth Amendments, Petitioner was provided due process by the trial court in admitting his oral statement when the trial court held a hearing on the admissibility of the statement during Petitioner's trial. And, while the Court admitted Petitioner's oral statement regarding the flashlight into evidence without requiring it to be recorded, Petitioner has not shown that this admission rendered his trial fundamentally unfair. Petitioner's

10

statement to the detective was made after he was advised of his rights under the Fifth Amendment to remain silent and consult an attorney. Further, the statement was admitted after the Court determined that Petitioner's questioning of Detective Breedlove opened the door for admission of the oral statements.

Finally, any harm in admitting the statement in violation of a state evidentiary rule is harmless under the *Brecht v Abrahamson* standard. Petitioner's written statement, in which he admitted hitting both of the children, was admitted into evidence at trial. Moreover, there was testimony admitted at trial from Petitioner's wife that, when she returned home, she found Petitioner screaming at their young child, and Petitioner had blood on his shirt and his hand was swollen. (R. 33:43-5, 70-87). There was also testimony given that Melodi told authorities that Petitioner beat her with a "light" and that there was a flashlight by the bed. And, the medical examiner testified that the injuries to Karlos were consistent with being hit with either a hand or a flashlight. (R. 34:113-22). Given all of the evidence the jury heard establishing Petitioner's guilt, Petitioner's statement that he "may" have hit Karlos with a flashlight did not have substantial and injurious effect or influence in determining the jury's verdict. Petitioner's first ground for relief is without merit, and it is denied.

## B.    Closing Argument Claim

In his second ground for relief, Petitioner contends that his due process rights were violated because the prosecutor commented on Petitioner's failure to testify during his closing statement at the guilt phase of the trial. In response, Respondent contends that this ground is procedurally barred because this claim was denied by the state court on an independent and adequate state law basis. Respondent further argues that the claim is without merit.

On direct appeal, Petitioner argued that the prosecutor made an improper comment during his closing statement on his failure to testify. The Court of Criminal Appeals overruled the point of error, holding that, because Petitioner did not make any objection at trial to the prosecutor's argument, Petitioner had forfeited this claim and could not raise the argument for the first time on appeal. (*Hernandez*, slip op. at 15). The Supreme Court has held that, when a state prisoner has defaulted his federal claim when he raised it in state court pursuant to an independent and adequate state procedural rule, federal habeas review is barred unless the prisoner can establish either cause for the default as well as actual prejudice as a result of the alleged violation of federal law *or* that failure to consider the claims would result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To satisfy the independent and adequate requirements, the dismissal of a claim must "clearly and expressly" indicate that it rests on state grounds which bar relief, *and* the bar must be strictly and regularly followed by state courts and applied to the majority of similar claims. *Finley v. Johnson*, 243 F.3d 215, 218 (5th Cir. 2001), *citing Amos v. Scott*, 61 F.3d 333, 338-39 (5th Cir. 1995). The Fifth Circuit has held that the Texas contemporaneous objection rule constitutes an adequate and independent state ground that procedurally bars federal habeas review of a claim. *Jackson v. Johnson*, 194 F.3d 641, 652 (5th Cir. 1999). The Court of Criminal Appeals has also ruled that an objection at trial is need to preserve even constitutional errors for appellate review. *See Allridge v. State*, 850 S.W.2d 471 (1991). Petitioner's second ground for relief was therefore denied at the state level on the basis of an independent and adequate state ground.

Accordingly, Petitioner is procedurally barred from raising this ground for relief in a federal petition for writ of habeas corpus unless he can establish either cause and prejudice or that the failure to consider the claims on the merits would result in a fundamental miscarriage of justice. *See Coleman*

*v. Thompson*, 501 U.S. at 750; *Jones v. Johnson*, 171 F.3d at 277. While Petitioner does acknowledge in his petition that no objection was made to this comment at trial (petition at 13, fn. 8), Petitioner does not assert either that he can establish cause and prejudice or that, should this Court fail to consider this claim on its merits, it would result in a fundamental miscarriage of justice. Accordingly, Petitioner's second ground for relief is procedurally barred and is dismissed.

## C.    Parole Instruction Claim

In his third ground for relief, Petitioner asserts that the trial court violated his constitutional due process rights when it declined to submit a requested jury instruction to the jury at the punishment phase of the trial regarding the requirements for granting parole in Texas to a capital life offender. In response, the State initially contends that this claim is procedurally barred because it was not exhausted at the state level. The State also contends that this claim is without merit because it is foreclosed by Fifth Circuit precedent.

On direct appeal, Petitioner argued as his seventh point of error that the trial court erred in refusing to submit Petitioner's proposed jury instruction regarding parole eligibility to the jury. As support for this point of error, Petitioner cited to and relied extensively on the Supreme Court's opinion in *Simmons v. South Carolina*, 512 U.S. 154 (1994). In particular, Petitioner argued that the jury should have been informed that, before a person under a life sentence can be paroled after serving at least forty years, a risk assessment had to be completed and two-thirds of the Board of Pardons and Paroles had to approve the granting of parole. (direct appeal brief, p. 48). In his federal habeas petition, Petitioner again cites *Simmons*, and again contends that the trial court erred in refusing to submit his requested instruction, but argues instead that this was error because the jury could have mistakenly

believed that, if Petitioner was sentenced to life, good conduct time could have reduced his parole eligibility to a period less than forty years. (Petition at 15).

The exhaustion requirement is satisfied when the substance of the federal claim has been fairly presented to the highest state court, but it is not satisfied if the federal petition presents a new legal theory or a new factual claim. *See Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998), *citing Picard v. Conner*, 404 U.S. 270, 275-8 (1971). Because this is a new factual claim that could have been presented to the state court during direct appeal or during the state habeas process, and because Petitioner does not allege, much less prove, that cause and prejudice exists for failing to raise this claim previously or that a fundamental miscarriage of justice would occur if the claim were not addressed, this claim is procedurally barred. Nevertheless, it also fails on the merits.

At the punishment phase of the trial, the jury received the following jury instruction from the trial court:

> You are instructed that, under the law applicable in this case, if the defendant is sentenced to imprisonment in the Institutional division of the Texas Department of Criminal Justice for life, the defendant will become eligible for release on parole, but not until the actual time served by the defendant equals 40 years, without consideration of any good conduct time. It cannot accurately be predicted how the parole laws might be applied to this defendant if the defendant is sentenced to a term of imprisonment for life because the application of those laws will depend on decisions made by prison and parole authorities, but eligibility for parole does not guarantee that parole will be granted.

(Tr.:75-6). This instruction tracks the statutory language in Article 37.071 of the Texas Code of Criminal Procedure. *See* Article 37.071 § 2(e)(2)(B)(Vernon 1999). Trial counsel had requested that the trial court submit the following instruction to the jury:

> Therefore, you are instructed that if assessed a life sentence, Jesse Joe Hernandez will become eligible for parole in 40 calendar years. Once he becomes eligible for parole, the Board of Pardon and Paroles may not authorize his release to parole unless

14

every board member receives a written report from the Department of Criminal Justice on the probability that Jesse Joe Hernandez would commit an offense after being released on parole, and that at least two-thirds of the membership votes to release him to parole.

(Tr.:57-8).  The trial court declined this request. (Tr.:60).

In addressing this issue on direct appeal, the Court of Criminal Appeals held that Petitioner's constitutional rights were not violated by this refusal because, while Petitioner received the statutory parole instruction, Petitioner was not entitled to *any* jury instruction on parole law under the federal constitution. *Hernandez*, slip op. at 15-6.  This decision is not contrary to well-established federal law.

As support for this claim, Petitioner relies on the Supreme Court case *Simmons v. South Carolina*, 512 U.S. 154 (1994).  *Simmons* is a death penalty case in which a plurality of the Supreme Court held that, where a defendant's future dangerousness is an issue in a capital case, and the sentencing options are death or life without the possibility of parole, due process allows the defendant to inform the sentencing jury about his parole ineligibility. *Id.* at 156.

Petitioner argues that *Simmons* is applicable to his case because, had he received a life sentence, he would not have been eligible for parole for forty years, a time period Petitioner asserts is comparable to a life sentence without parole.  Contrary to Petitioner's argument, however, the plurality opinion in *Simmons* specifically limited its holding to cases where the sentencing option is between death and life *without parole*.  Justice Blackmun, writing for the Court, went further and stated that "[i]n a State in which parole is available, how the jury's knowledge of parole availability will affect the decision whether or not to impose the death penalty is speculative, and we will not lightly second-guess a decision whether or not to inform a jury of information regarding parole." *Id.* at 168.  Moreover,

15

since the Supreme Court's decision in *Simmons*, the Fifth Circuit has specifically held that *Simmons* does not apply in Texas cases where parole is a possibility, but only in cases where life-without-parole is a sentencing option. *Miller v. Johnson*, 200 F.3d 274 (5th Cir. 2000); *Allridge v. Scott*, 41 F.3d 213, 222 (5th Cir. 1994).

As these precedents make clear, federal courts have determined that, where a capital offender is eligible for parole, the courts will not impose a requirement to inform the jury about parole eligibility. Since 1999, Texas has chosen to inform capital juries about the defendant's parole eligibility. As federal case law does not require making even this information available to jurors, this case law certainly has not held that information about how a parole board votes to parole an individual is constitutionally required. Moreover, contrary to Petitioner's argument that the parole instruction given to the jury could have mistakenly led the jurors to believe that his minimum sentence could be reduced by good conduct time, the instruction specifically states that the minimum sentence before being eligible for parole was forty years, "without consideration of any good conduct time." Petitioner's third ground for relief is without merit and is denied.

**D.     Mitigation Special Issue Claim**

In his fourth ground for relief, Petitioner contends that the mitigation special issue that the jury was required to answer at the punishment phase of his trial is unconstitutional because it does not place a burden of proof on the State. Specifically, Petitioner contends that the State should have been required to establish beyond a reasonable doubt the absence of mitigating factors sufficient to warrant a life, rather than a death, sentence.

16

Pursuant to Article 37.071 of the Texas Code of Criminal Procedure, the jury at petitioner's trial was required to answer the following two special issues or questions at the punishment phase of petitioner's trial:

> Do you find from the evidence beyond a reasonable doubt that there is a probability that the defendant, Jesse Joe Hernandez, would commit criminal acts of violence that would constitute a continuing threat to society?

> Do you find, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, that there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed?

(Tr.:77-8).  The jury answered the first question "yes" and the second question, the mitigation special issue, "no." (*Id.*).

Petitioner asserts that due process requires that the jury decide the mitigation special issue using the "beyond a reasonable doubt" standard.  In particular, Petitioner cites the Supreme Court cases *Cunningham v. California*, 129 S.Ct. 856 (2007), *Ring v. Arizona*, 536 U.S. 548 (2002), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), for support for his assertion that federal law requires that a Texas capital jury be required to find the absence of factors that mitigate against the death penalty beyond a reasonable doubt before a defendant may be sentenced to death.

In addressing this issue at the state level, the Court of Criminal Appeals on direct appeal, citing several previous cases from that court which held that the absence of a burden of proof in the mitigation special issue violated neither *Apprendi* nor *Ring*, overruled this point of error. *Hernandez*, slip op. at 16; *see also Resendiz v. State*, 112 S.W.3d 541, 549-50 (Tex. Crim. App. 2003); *Allen v. State*, 108 S.W.3d 281, 285 (Tex. Crim. App. 2003).  This is not an unreasonable application of federal law.

Petitioner argues that the mitigating special issue acts as an aggravating factor because the absence of mitigating factors aggravates his sentence from life to death, and therefore a jury must find the absence of such evidence beyond a reasonable doubt. But, contrary to Petitioner's argument, the Fifth Circuit has specifically held that there is no constitutional requirement that Texas' mitigation issue be assigned a burden of proof. *See Rowell v. Dretke*, 398 F.3d 370, 378 (5th Cir. 2003). And, recently, in addressing an identical argument based on the holdings in *Ring* and *Apprendi*, the Fifth Circuit specifically held that a petitioner's Sixth Amendment rights are not violated when state law does not require the prosecution to prove the absence of mitigating factors beyond a reasonable doubt. *See Grandos v. Quarterman*, 455 F.3d 529, 536-37 (5th Cir.), *cert. denied*, 127 S.Ct. 732 (2006). Accordingly, the Fifth Circuit has held that the United States Constitution does not require that the jury find beyond a reasonable doubt the absence of mitigating factors warranting a life sentence before a defendant may be sentenced to death. This Court is not at liberty to overrule Fifth Circuit precedent. Moreover, based on this precedent, the state court decision is not an unreasonable application of federal law. Petitioner's fourth ground for relief is without merit, and he is not entitled to relief on this basis. This claim is denied.

### E.    Special Issues' Terms Claim

In his fifth and sixth grounds for relief, Petitioner claims that his federal constitutional rights were violated because a number of the terms in the special issues that a capital jury is required to answer at the punishment phase of a Texas death penalty trial are not defined for the jury. In particular, Petitioner complains that the term "probability," used in the future dangerousness special issue, diminishes the State's burden of proof from "beyond a reasonable doubt" to a "probability," and that the terms "probability," "criminal acts of violence," and "continuing threat to society" are

unconstitutionally vague terms that were contained in the future dangerousness special issue the jury was required to answer but were not defined for the jury. Respondent contends that Petitioner's fifth ground for relief was not exhausted at the state level and is procedurally barred and that both grounds for relief are without merit.

As noted earlier, at the punishment phase of the trial, the jury was required to answer the following two special issues:

> Do you find from the evidence beyond a reasonable doubt that there is a probability that the defendant, Jesse Joe Hernandez, would commit criminal acts of violence that would constitute a continuing threat to society?

> Do you find, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, that there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed?

(Tr.:77-8).

In his fifth ground for relief, Petitioner asserts that the use of the term "probability" in the first special issue lowers the state's burden of proof from "beyond a reasonable doubt" to a mere "probability." Petitioner did not, however, make this claim either on direct appeal or in his state habeas application. Moreover, were this claim to be brought in a subsequent state writ of habeas corpus, it would be procedurally barred because it could have been raised previously and this claim does not contain sufficient facts that establish that, but for a violation of the United States Constitution, no rational juror would have answered the punishment issues in the State's favor. *See* TEX. CODE CRIM. PROC. ANN. art 11.071 § 5(a) (Vernon Supp. 1999). Accordingly, this ground for relief is procedurally barred at the federal level. *See Bledsoe v. Johnson*, 188 F.3d 250, 254 (5th Cir. 1999). Nevertheless, this ground for relief is also without merit. *See* 28 U.S.C. § 2254(b)(2). The Fifth Circuit Court of

Appeals has recently denied a similar claim that the future dangerousness special issue violates a defendant's due process rights because it dilutes the State's burden of proof. *See Scheanette v. Quarterman*, 482 F.3d 815, 827-28 (5th Cir. 2007). Petitioner's fifth ground for relief is without merit and is denied.

In his sixth ground for relief, Petitioner contends that the failure to define certain terms in the first special issue both lowers the burden of proof and renders this special issue arbitrary. (Petition at 31-2). However, the Fifth Circuit has consistently held that these terms are not unconstitutionally vague and can instead be understood in their common meaning. *Woods v. Johnson*, 75 F.3d 1017, 1033-34 (5th Cir. 1996) (noting the long line of Fifth Circuit cases holding that the terms in the Texas punishment special issues need not be defined in the jury instructions); *James v. Collins*, 987 F.2d 1116, 1119-20 (5th Cir. 1993) (not necessary to define "deliberately," "probability," "criminal acts of violence," or continuing threat to society"); *Nethery v. Collins*, 993 F.2d 1154, 1162 (5th Cir. 1993) (not necessary to define "deliberately," probability," or "society"); *Thompson v. Lynaugh*, 821 F.2d 1054, 1060 (5th Cir. 1987) (holding that "deliberately" need not be defined as its common meaning is sufficiently clear to allow jury to answer special issues). Indeed, in *Milton v. Procunier*, 744 F.2d 1091, 1095-96 (5th Cir 1984), the Fifth Circuit noted that the term "probability" has a plain meaning such that the discretion left to the jury in answering the future dangerousness issue is no more than the discretion that exists in the jury system itself.

Furthermore, the Supreme Court has held that the future dangerousness special issue that the jury in the instant case was required to answer passes constitutional muster. *Jurek v. Texas*, 428 U.S. 262 (1976). And, while the Supreme Court in *Penry v. Lynaugh*, 492 U.S. 302, 322-25 (1989), held that the future dangerousness special issue given to the jury in petitioner's case standing alone does

not allow juries to consider adequately certain mitigating evidence such as mental retardation, the Supreme Court has never determined that the federal constitution requires that terms used in that issue be given specific definitions.

On direct appeal, the Court of Criminal Appeals, based on its previous case law, overruled a claim that the trial court erred by failing to define the word "probability" and the phrases "criminal acts of violence" and continuing threat to society" contained in the jury charge. *Hernandez*, slip op. at 16. Given the long line of Fifth Circuit precedents supporting this decision, it cannot be said that this decision at the state habeas level denying this claim for relief is contrary to clearly established federal law. Accordingly, Petitioner's sixth ground for relief is without merit, and it is denied.

## F.    "10-12" Rule Claim

In his seventh ground for relief, Hernandez asserts that he was denied his constitutional rights under the Eighth and Fourteenth Amendments because the jury in his trial was misled about the effect of a "no" vote by a single juror to the future dangerousness special issue or a "yes" vote by a single juror to the mitigation special issue. Hernandez contends that, because the parties are not allowed to inform the jury that one hold-out juror on either special issue would result in a life sentence, but the jury is instead instructed that ten "no" votes on the first special issue or ten "yes" votes on the second special issue are required to impose a life sentence, jurors may feel coerced into voting in such a way that imposes the death sentence, believing that a single vote would have no effect.

As noted earlier, the jury in Hernandez' case was required to answer two special issues, those being the future dangerousness issue and the mitigation issue. The jurors were instructed that they could not answer the future dangerousness issue "yes" or the mitigation issue "no" unless all twelve jurors were unanimous in that decision. They also were instructed that they could not answer the future

21

dangerousness special issue "no" or the mitigation special issue "yes," unless at least ten jurors agreed with that answer, which would then result in a life sentence. (Tr.:73-4). This is commonly known as the "12-10" rule. However, under Texas state law, if the jury fails to reach a decision regarding either special issue in a capital murder case, the defendant will receive a life sentence. By law, none of the parties are permitted to inform the jury that this will be the result should the jury fail to reach a verdict. TEX. CODE CRIM. PROC. ANN. art 37.071 § 2(a)(1), (g) (Vernon 1993).

The defense filed a written objection with the trial court asking that Article 37.071 §2(g) be declared unconstitutional because a capital jury is not informed that a life sentence, rather than a mistrial, is the result if the jurors do not reach answers on the punishment special issues. Defense counsel also requested in this pleading that the jury be instructed that no mistrial would result if the jurors failed to reach agreement on the special issues. This motion was denied by the trial court. (Tr.:52-6). On direct appeal, the Court of Criminal Appeals denied a claim that the 12-10 rule violates due process and the Eighth and Fourteenth Amendments based on previous rulings by that court. *Hernendez*, slip op. at 16-7. This conclusion is not contrary to federal law.

In his federal petition, Hernandez cites *Mills v. Maryland*, 486 U.S. 367, 383 (1988), a case in which the Supreme Court struck down Maryland's capital sentencing system because a single juror could preclude the jury from considering certain evidence to be mitigating and the jury could be prevented from considering mitigating factors if the twelve jurors did not agree on what the specific facts were. Petitioner also cites *Caldwell v. Mississippi*, 472 U.S. 320, 329 (1985), a case in which the Supreme Court held that a criminal defendant's Eighth Amendment rights are violated when a prosecutor argues in a manner that leads a jury in a death penalty case to believe that the jury is not ultimately responsible for the penalty given.

22

A United States Supreme Court case that directly addressed the issue at hand, however, is *Jones v. United States*, 527 U.S. 373, 381 (1999). In *Jones*, the Supreme Court addressed the question of whether a federal death penalty defendant's Eighth Amendment rights were violated because the jurors in his case were not given a jury instruction at the punishment phase of the trial regarding the consequences of a jury deadlock at punishment. Because *Jones* was a federal death penalty case, under the federal death penalty statute, the jury was required to consider all aggravating and mitigating factors and determine whether the aggravating factors outweighed the mitigating factors. All aggravating factors in a federal death penalty case must be proven beyond a reasonable doubt, whereas the jury may consider a mitigating circumstance so long as one juror finds that its existence has been established by a preponderance of the evidence. In *Jones*, the jury unanimously found the existence of two statutory and two non-statutory aggravating factors beyond a reasonable doubt and various jurors found the existence of ten mitigating factors. After weighing these factors, the jury unanimously recommended that Jones be sentenced to death. The jury did not receive an instruction requested by the defense which informed the jurors that if they were unable to reach an unanimous decision with regard to the sentence to be imposed, the judge should be informed and would then impose a sentence of life imprisonment without possibility of parole. *Jones*, 527 U.S. at 376-80.

Although the Supreme Court in *Jones* acknowledged that it had previously held that a death sentence could not be imposed arbitrarily, that a jury must be given a vehicle in which all relevant mitigating evidence may be considered at the punishment phase of a capital murder trial, and that a jury cannot be affirmatively misled regarding its role in the sentencing process, the Court held that the Eighth Amendment was not violated simply because the jury was not informed of the consequences of a deadlock on the issue of punishment. Specifically, the Court held that the federal constitution

was not violated because: 1) the jury in Jones' case was not misled about its role at punishment; 2) the object of the jury system is to secure unanimity by a dialogue among the jurors; and 3) in a capital sentencing proceeding the government has a strong interest in having the jury express the conscience of the community that might be undermined if the jury was informed about the consequences of a deadlock. *Id.* at 382. Moreover, the dissent in *Jones* did not dispute that the Eighth Amendment does not generally require that a jury be instructed as to the consequences of a failure to agree. Thus, both the majority and the dissenting opinions in *Jones* make clear that the Supreme Court does not consider it a requirement of the Eighth Amendment that a capital jury be informed of the consequences of a failure to agree with respect to its verdict at the punishment phase of the trial.

Although *Jones* did not specifically address Petitioner's Fourteenth Amendment claim, since *Jones* was handed down by the Supreme Court, the Fifth Circuit has held that an argument that the "12-10" rule in Texas violated a capital murder defendant's Eighth and Fourteenth Amendments was without merit. *Alexander v. Johnson*, 211 F.3d 895, 897, n. 5 (5th Cir. 2000). Moreover, the Fifth Circuit has also consistently held that any ruling that the "12-10" rule violated the federal constitution would be a new constitutional rule of criminal procedure as defined in *Teague v. Lane*, 489 U.S. 288, 311-13 (1989), and therefore could not form the basis for federal habeas corpus relief. *See Hughes v. Dretke*, 2005 WL 1384580 (5th Cir. June 10, 2005); *Alexander*, 211 F.3d at 897; *Davis v. Scott*, 51 F.3d 457, 467 (5th Cir. 1995); *Webb v. Collins*, 2 F.3d 93 (5th Cir. 1993). Accordingly, this ground for relief is without merit, and it is denied.

IT IS THEREFORE ORDERED that Petitioner's Petition for Writ of Habeas Corpus be, and is hereby, DENIED, except for his second ground for relief, which is hereby DISMISSED on procedural grounds.

The Clerk of Court shall transmit a true copy of this Order to Petitioner and to Counsel for Respondent.

SO ORDERED this 19th day of May 2008.


_____
JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE